## ELLIOTT *v.* KRAUS.

[No. 14,005. Filed September 25, 1930. Rehearing denied February 11, 1931. Petition to transfer dismissed June 2, 1931.]

*Russell P. Kehoe*, for appellant.

*H. Willard Phipps* and *L. A. Douglass*, for appellee.

LOCKYEAR, J.—The motion for a new trial in this case was overruled on November 19, 1929; no time was given at that time for filing a bill of exceptions. Two days thereafter, the appellant asked for 60 days' time within which to file a bill of exceptions; the bill was filed within that time. Appellee in his brief says that this court judicially knows that the November term, 1929, of the Clark Circuit Court convened on the third Monday in November (November 18, 1929); that January 11, 1930, the date when the bill of exceptions was filed, was not at the November term, 1929, but was after the end of the term.

The terms of the Clark County, Fourth Circuit, are the third Monday of April, second Monday of September, third Monday of November, and the third Monday of February, and to continue as long as necessary. §1405 Burns 1926 (Acts 1915 p. 358). There is nothing in the record that shows when the November term, 1929, adjourned, and we cannot judicially know that it had adjourned, and we must therefore presume that the bill of exceptions was filed within the term.

The complaint is based on the alleged negligence of appellant: (1) Negligently, unlawfully, carelessly and recklessly driving an automobile in a reckless and dangerous manner so as to endanger the life of any person, by driving his automobile upon the south side of Market Street in the city of Jeffersonville, Indiana, which side was to the left of appellant, who was then the operator of the automobile; (2) by carelessly and negligently driv-

ing an automobile over Market Street where the same passed through the closely built-up business portion of the city of Jeffersonville, Indiana, at a speed of 20 miles an hour; (3) by negligently failing to keep a lookout for and discover the decedent Marvin Kraus, who was alleged then to be playing in and upon Market Street; (4) by carelessly and negligently driving an automobile at a speed greater than was reasonable and prudent, having regard to the place, traffic, weather and use of road; and (5) by carelessly and negligently driving an automobile on the south side of Market Street, which side was to the left of the driver. It is alleged that, as a direct result of the unlawful, careless and negligent acts of appellant, as above set forth, Marvin Kraus, a child of three and one-half years, was struck by appellant's automobile while playing in Market Street, injuring him, and from which injuries Marvin Kraus died. The particular damage to appellee is that, as a direct result of the death of his son, he has been deprived of the services of his son until he would have reached the age of 21 years.

Market Street is a public highway and street running east and west in the city of Jeffersonville, Indiana, in the center of which is a track over which electric cars run. About four o'clock in the afternoon, appellant was delivering groceries in his one and one-half ton truck on said street on the same side of the street within the same city block where Marvin Kraus was found lying. The place where appellant's truck was parked while delivering groceries was 18 feet east from the place where Marvin Kraus was found. At this place, appellant got in his truck, started the engine and proceeded west on Market Street into the next block, in the middle of which he passed another truck headed east, after which appellant stopped his truck in front of the last house west in this block. Appellant testified that at no time did he see Marvin Kraus or hear or notice any

commotion or anything unusual during that time, about 20 or 30 minutes elapsed from the time he passed the truck going east until he returned to his place of business, when someone called over the telephone and told him his truck had run over Marvin Kraus; appellant immediately drove his truck to the home of Marvin Kraus, at which place a crowd was gathered. The evidence showed that, about four o'clock in and on this afternoon, Marvin Kraus was playing on the corner opposite and across the street from where appellant's truck was parked. There is no direct evidence pointing to appellant as the person causing the death of Marvin Kraus, nor did anyone offer to testify that he or she saw the accident, although the evidence shows that there were a few children playing on the corner with Marvin Kraus a few minutes before the death of the boy.

Stanley Cannon testified that he was driving east on Market Street and met the appellant going west on the south side of the street in the block west about 122 feet from Illinois Avenue; he thought the appellant was driving about 22 miles per hour; later, he testified about 15 or 18 miles per hour, and that he was not sure how fast the appellant was driving; Cannon drove on into the next block east and was attracted by a boy crying and shouting, and he found Marvin Kraus lying in the gutter, with his head near the curbing and his feet out from the curbing, and it was about 18 feet from in front of the Crabb house to the place where he picked up the child.

Matthew E. Clegg testified that he was the chief of police of the city of Jeffersonville; that he went immediately to the home of the appellee as soon as he heard of the death of the child; that the appellant came to the home of the appellee in his truck, and that the witness examined the truck and found a small "ravel" and a small light hair on the left bumper; the ravel was dark blue

and the hair looked light.   He testified further that he could not in any way identify the ravel with the clothing which Marvin Kraus wore on the day of the accident, although he saw the clothing the boy wore at the time.

Mrs. Louis Kraus, the mother of Marvin, testified concerning the thread and the hair as follows:   "It looks like it is off of his clothing or his pants.   Mr. Clegg brought it down and showed it to me on Tuesday after the funeral on Sunday.   I recall the clothing Marvin wore on that day.   This thread seems to be exactly like it.   This article is a ravel of my boy's pants and is his hair."

The appellant testified that, after delivering the groceries at the house across the street from where the appellee lives, he came out and started his car; the car was dead and he had to start the motor; that he went on west on Market Street and met the witness Cannon going east in the middle of the next block; that he could not have been going over 2 or 3 miles an hour at the place 18 feet west of where he started, for it is impossible for his truck to go 15 miles an hour in the first 18 feet starting in low gear; when he got back to his store, within 15 or 20 minutes, somebody telephoned him that his truck had hit a child and he jumped into his truck and went to the home of the appellee.   The appellant says that he never hit any child; he says he did not see Marvin Kraus and that he did not run over anybody.

It is incumbent upon the appellee in this case to prove by a preponderance of the evidence that the appellant was negligent in driving his car, in one or more of the particulars as set out in the complaint, and that the negligence of the appellant so established was the proximate cause of the death of Marvin Kraus.

Appellant filed a motion for a new trial on the ground that the verdict of the jury is not sustained by sufficient evidence and is contrary to law, also on the ground that

the damages assessed by the jury are excessive. This motion was overruled, and the ruling of the court is assigned as error.

Appellant contends that there is no competent evidence to show that appellant's car even struck the child or that any negligent act of his was the cause of the child's death. The jury found for the appellee and assessed his damages at $8,000. This certainly impressed the trial court as being too large, and a *remittitur* of $2,800 was ordered and a judgment for $5,200 was rendered against appellant in favor of appellee. The trial court evidently thought the original verdict showed that the jury was actuated by something other than the evidence.

The measure of damages in a case of this kind is the value of the child's services from the time of his death until he would have attained his majority, taken in connection with his prospects in life, less the cost of his support and maintenance during that period, including such as board, clothing, schooling and medical attention. *City of Elwood* v. *Addison* (1901), 26 Ind. App. 28; *Pennsylvania Co.* v. *Lilly* (1881), 73 Ind. 252; *Louisville, etc., R. Co.* v. *Rush* (1891), 127 Ind. 545, 26 N. E. 1010.

A verdict will not be disturbed on appeal on the grounds of excessive damages unless it is so excessive as to indicate that the jury acted from prejudice, passion, partiality or corruption. *Elkhart, etc., R. Co.* v. *Waldorf* (1897), 17 Ind. App. 29, 46 N. E. 88; *Terre Haute, etc., Traction Co.* v. *Maberry* (1913), 52 Ind. App. 114, 100 N. E. 401.

In case the original verdict is excessive in an amount sufficient to indicate that the same was actuated from something other than the evidence, the order of a *remittitur* will not cure the error of the jury in awarding an excessive amount. *Schultz* v. *Chi-*

*cago, etc., R. Co.* (1880), 48 Wis. 375, 4 N. W. 399; *Loewenthal* v. *Streng* (1878), 90 Ill. 74; *Wainwright* v. *Satterfield* (1897), 52 Nebr. 403, 72 N. W. 359.

There is no evidence tending to show any loss of services to the appellee, except what might have been inferred from the age of the child, his relationship to the appellee, and the circumstances attending his death, so, when we consider the cost of raising a child, of compulsory education, clothing, food, etc., and how little is expected of a child in the way of financial return to its parents, we are of the opinion that the damages awarded are excessive as not being supported by the evidence in this case. The amount of the verdict rendered in this case, when considered in the light of the evidence and the instructions given by the court, impel us, as it certainly did the trial court, to the conclusion that the jury was actuated by something other than the evidence as adduced from the witnesses and the instructions given by the court.

Since a new trial must be ordered because of the excessive verdict, it may not be necessary to discuss the other errors assigned, for we cannot say what the evidence will be on the retrial of this cause. We may say, however, that the burden of proof is on the plaintiff to prove one or more of those acts of negligence was the cause of the death of the child Marvin Kraus. It is not enough to show that the appellant's negligence was adequate and sufficient to cause the death of the child, it must show that it did cause it. *Werling* v. *New York, etc., R. Co.* (1929), 90 Ind. App. 26, 168 N. E. 42; *Pennsylvania R. Co.* v. *Johnson, Admx.* (1929), 91 Ind. App. 412, 169 N. E. 358; *McBroom* v. *Putney* (1867), 28 Ind. 353. See 45 C. J. 1267, and cases there cited. A jury may believe that Marvin Kraus was killed by coming in contact with the bumper of appellant's truck, but the question is: How did it happen?

Unless it is shown that the appellant's negligence was the cause of the child's death, a jury is not justified in rendering a verdict in any amount.

The only evidence that appellant's truck hit the child is a hair and a thread, or ravel found on the bumper of appellant's truck. This piece of evidence could only tend to prove one fact, that is, the child came in contact with the bumper. Was the child standing still? Was he running or walking? Did he see the truck? What was he doing? Did he run against the truck or did the truck run against him? All we know he was found dead in the gutter. What was the negligent act of the appellant? Death draws the curtain and we are left to surmise and conjecture. The record before us does not show how and in what manner the child was killed, and, for that reason, as well as the excessiveness of the verdict, the judgment is reversed, with instructions to grant appellant's motion for a new trial.